IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MAJOR J. WILLIAMS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV603 |
| | ) | |
| FUTURE FOAM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") and 12(b)(5) ("Rule 12(b)(5)"). (Docket Entry 8.) Plaintiff has filed a Response in opposition to said Motion (Docket Entry 14), and Defendants have filed a Reply in opposition to said Response (Docket Entry 15). The issues raised are ripe for ruling. For the reasons that follow, the undersigned recommends that Defendant's Motion be denied.

### I. BACKGROUND

#### a. Preliminary Relevant Legal Standards

Plaintiff Major J. Williams, III ("Plaintiff") appears *pro se*, and his pleadings therefore "should not be scrutinized with such technical nicety that a meritorious claim should be defeated." *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). But the requirement of liberal construction does not allow the court to ignore clear defects in pleadings, *see Bustos v. Chamberlain*, No. 3:09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to become an advocate for the *pro se*

1

party, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). *See also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that "[d]istrict judges are not mind readers"). The Court must accept the facts alleged in the Complaint as true. *Hassan v. Barzani*, 674 F. Supp. 3d 282, 289 n.2 (E.D. Va. 2023) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (district court must accept as true facts pled in a complaint when resolving a Rule 12(b)(2) motion to dismiss).

Where a plaintiff does not effectuate "valid service of process, the district court [is] without jurisdiction of the defendant …." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). In this context, "[a] trial court may consider evidence by affidavit … without converting the proceeding to one for summary judgment." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982), *cited with approval in Soto v. Meadow Mills, Inc.*, No. CIVA309CV292HEH, 2009 WL 1873785, at *4 (E.D. Va. June 29, 2009) (unpublished) (granting motion to dismiss pursuant to Rule 12(b)(2)); *see also Lackey v. Cnty. of Macon*, No. 2:09CV42, 2009 WL 2462186, at *2 (W.D.N.C. Aug. 7, 2009) (unpublished) (stating that, with respect to a Rule 12(b)(5) motion, "affidavits and other materials outside the pleadings may be properly submitted and considered").

### b. Factual and Procedural Background

Plaintiff brings claims against his former employer, Future Foam, Inc. ("Future Foam") and three Future Foam personnel: John Cain, Plant Manager ("Cain"); Danny Tysinger, Laminator Department Supervisor ("Tysinger"); and Eric Brady, Forklift Driver ("Brady") (collectively, "Defendants"). (Docket Entry 1, Complaint ("Compl.") at 1-2.)[1] Plaintiff alleges that on April

---

[1] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

20, 2023, Brady attempted to hit Plaintiff with Brady's forklift, that Tysinger "did not attem[pt] to rectify [the] issue of gross negligence of company property[,]" and that Cain "creates hostile work envi[ron]ment with [har]assing remarks about [Plaintiff's] race and religious preference." (*Id.* at 4.)

On October 6, 2023, Plaintiff filed a Charge of Discrimination against Future Foam with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on his "race as an African American and [his] religious beliefs because of the ankh symbol [he] wear[s.]" (*Id.* at 7.) Therein, he alleges that Cain harassed him with racially derogatory remarks,[2] that he was threatened by a co-worker and that "management" created a hostile work environment by ignoring Plaintiff when he informed them of this threat, and that on August 24, 2023, he was terminated for refusing to sign an arbitration agreement. (*See id.*) On April 22, 2024, Plaintiff received a right-to-sue letter from the EEOC. (*Id.* at 10.)[3]

In reliance on the above allegations, Plaintiff filed the Complaint in the instant action on July 19, 2024, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). (*See id.* at 1-3.) On July 22, 2024, the Clerk issued summonses for each Defendant (Docket Entry 4) and Plaintiff, using form AO 440, filed incomplete Proof of Service Affidavits, listing only the name of each Defendant but leaving the remainder of the form blank, thereby making no effective representation that a summons was ever served on any Defendant at that time. (*See* Docket Entry 4 at 2, 4-1 at 2, 4-2 at 2, 4-3 at 2.)

---

[2] Plaintiff also alleges that "Teresa Warner, the manager" made racially derogatory remarks to him as well (Comp. at 9); Teresa Warner is not named as a defendant in this action.

[3] On February 20, 2024, counsel for Future Foam wrote a "Statement of Position" letter to the EEOC setting forth their arguments regarding the allegations raised by Plaintiff and arguing that his Complaint lacks merit and should be dismissed. (*See id.* at 11-21.) This letter states that "Tysinger was the Retail Operations Manager" and that "Stephen Dace" was "the Laminating Supervisor." (*Id.* at 13.)

3

On September 16, 2024, copies of civil summonses were served on Tysinger, Cain, Brady, and Marvin Ayala ("Ayala"). (*See* Docket Entry 6; Docket Entry 8-1, Affidavit of John Cain ("Cain Aff.") ¶¶ 4-7; Docket Entry 8-2, Affidavit of Danny Tysinger ("Tysinger Aff.") ¶¶ 4-7; Docket Entry 8-3, Affidavit of Eric Brady ("Brady Aff.") ¶¶ 4-7; Docket Entry 9 at 2.) On September 25, 2024, documents titled "Complaint for a Civil Case" were served on Tysinger, Cain, Brady, and Ayala. (*See* Docket Entry 7; Cain Aff. ¶¶ 8-11; Tysinger Aff. ¶¶ 8-11; Brady Aff. ¶¶ 8-11; Docket Entry 9 at 2.)

The affidavits of service filed by Plaintiff indicate that Ayala is a registered agent for Future Foam. (*See* Docket Entries 6, 7, 11; *see also* Docket Entry 14 at 25.) Defendants filed the Affidavit of Doug Friedman ("Friedman") (Docket Entry 8-4 "Friedman Aff."), which indicates that "[o]ne of [Friedman's] duties is to receive notice of service of documents on Future Foam's registered agents[.]" (Friedman Aff. ¶ 4.) Friedman was notified via email that Future Foam was served with documents titled "Service of Process Transmittal Summary," "Process Server Delivery Details," and "Summons in a Civil Action" on September 17, 2024, and served with a document titled "Complaint for a Civil Case" on September 25, 2024. (Friedman Aff. ¶¶ 7-12; Docket Entry 9 at 3-4.)

On October 8, 2024, Defendants moved to dismiss the Complaint "for insufficient services of process and for lack of personal jurisdiction[,]" arguing that "Plaintiff failed to perfect service of the Complaint on Defendants as required by FRCP Rule 4" ("Rule 4"). (Docket Entry 8 at 1, Docket Entry 9 at 1.) On October 28, 2024, Defendants filed a supplemental memorandum (Docket Entry 10) and supporting affidavit (Docket Entry 11). Defendants argue that "on October 22, 2024, Plaintiff again made attempts to serve Defendants," but that said

4

attempts failed because they "occurred 95 days after [Plaintiff] filed the Complaint." (*See* Docket Entry 10 at 2.) Defendants argue that the Federal Rules of Civil Procedure require the Complaint to be dismissed due to Plaintiff's untimely perfection of service. (*Id.* at 3.)

## II. ANALYSIS

### a. Standards of Review

"Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998); *Reynolds Innovations*, 851 F. Supp. 2d at 962; *U.S. ex rel. Metromont Corp. v. S.J. Constr., Inc.*, No. 1:09CV745, 2010 WL 2793919, at *5 (M.D.N.C. July 15, 2010) (unpublished) ("If service of process is not valid, a district court lacks jurisdiction over a defendant."). "When service of process is deficient, dismissal for lack of personal jurisdiction under [Rule] 12(b)(2) is proper." *Manghan v. Michelin*, No. 3:24-CV-576-MOC, 2024 WL 4271591, at *2 (W.D.N.C. Sept. 23, 2024). "Actual notice of a lawsuit is insufficient to confer jurisdiction over the person of a defendant, and improper service of process, even if it results in notice, is not sufficient to confer such personal jurisdiction." *Id.* (citing *Land v. Food Lion, LLC*, No. 3:12-CV-00006-GCM, 2012 WL 1669678, at *3 (W.D.N.C. May 14, 2012)).

Where service of process failed to comply with the requirements of Rule 4, a defendant may also move to dismiss a complaint for ineffective service of process under Rule 12(b)(5). *See id.* (citing *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 526 (M.D.N.C. 1996)). Pursuant to Rule 4, service may be effectuated under state law (Rule 4(e)(1)) or by delivering copies of the summons and the complaint "to the person

5

individually," leaving a copy at the person's home, or delivering a copy to "an authorized agent." Fed. R. Civ. P. 4(c)(1), 4(e)(2).[4]

Once sufficiency of service has been challenged, "[t]he plaintiff bears the burden of establishing that service of process has been accomplished in compliance with [Rule] 4." *Manghan*, 2024 WL 4271591 at *2 (citing *Plant Genetic*, 933 F. Supp. at 526). "Although courts afford *pro se* plaintiffs a degree of leniency in the litigation process, this Court has made it clear that *pro* se plaintiffs must still strictly follow the rules for process and service of process." *Id.* (citations omitted). If a defendant is not served within 90 days after the complaint is filed, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

"*Pro se* status, however, is insufficient to establish good cause, even where the *pro se* plaintiff mistakenly believes that service was made properly." *Hansan v. Fairfax Cnty. Sch. Bd.*, 405 Fed. Appx. 793, 794 (4th Cir. 2010); *see McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Jonas v. Citibank*, 414 F.Supp.2d 411, 416 (S.D.N.Y. 2006) (stating, in context of motion to dismiss *pro se* plaintiff's complaint, that "a mistaken belief that service was proper does not constitute good cause"; and "neglect and inadvertence do not suffice"). Additionally, "[a] plaintiff's failure to

---

[4] Service of process on an individual under North Carolina law is governed by North Carolina Rule of Civil Procedure 4. N.C. Gen. Stat. § 1A-1, Rule 4(j)(l). N.C. R. Civ. P. 4 provides that service can be accomplished by delivering a copy of the summons and complaint: to the person; to the person's dwelling or usual place of abode; to an authorized agent; or by mail, addressed to the party to be served. *Id.*

6

Case 1:24-cv-00603-TDS-JLW    Document 16    Filed 04/22/25    Page 6 of 15

seek an extension of time undermines the defense of good cause." *Tann v. Fisher*, 276 F.R.D. 190, 193 (D. Md.) (citing *Jonas*, 414 F.Supp.2d at 416) *aff'd*, 458 F. App'x 268 (4th Cir. 2011).

> "Good cause" requires a "showing of diligence on the part of the plaintiffs." *Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019). Consistent with that foundational principle, good cause is commonly found to "exist[ ] when the failure of service is due to external factors, such as the defendant's intentional evasion of service," but "significant periods of inactivity" and a "fail[ure] to seek extension of time before [the] deadline [has] lapsed" tend to undercut any claim of good cause. *Id.* At bottom, "[w]hile 'good cause' is a flexible standard, diligence provides a touchstone for an appellate court" in its review. *Id.*; *see also* 4B Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1137 (4th ed. 2015) (explaining that in evaluating good cause under Rule 4(m), "courts have rejected excuses based on … ignorance of the rule, the absence of prejudice to the defendant, … inadvertence of counsel, or the expenditure of efforts that fall short of real diligence by the serving party").

*Gelin v. Shuman*, 35 F.4th 212, 218 (4th Cir. 2022). That said, in *Gelin*, the Fourth Circuit clarified that "under Rule 4(m), a district court possesses discretion to grant the plaintiff an extension of time to serve a defendant with the complaint and summons even absent a showing of good cause by the plaintiff for failing to serve the defendant during the 90-day period provided by the Rule. And if the plaintiff is able to show good cause for the failure, then the court *must* grant the extension. *Gelin*, 35 F.4th at 220 (emphasis in original); *Suiter v. Barra*, No. 5:24-CV-00054, 2025 WL 899335, at *2 (W.D. Va. Mar. 20, 2025).

Furthermore, noncompliance with Rule 4 does not mandate dismissal where the necessary parties have received actual notice of a suit and where they have not been prejudiced by the technical defect in service. *See Karlsson v. Rabinowitz*, 318 F.2d 666, 668-69 (4th Cir. 1963) ("In determining whether the plaintiff has satisfied his burden, the technical requirements of service should be construed liberally as long as the defendant had actual notice of the pending suit."). "When there is actual notice, every technical violation of the rule or failure of strict

compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Id.* (citing *Armco*, 733 F.2d at 1089); *see also Tart v. Hudgins*, 58 F.R.D. 116, 117 (M.D.N.C. 1972) (observing that a liberal interpretation of process requirements "does not mean … that the provisions of the Rule may be ignored if the defendant receives actual notice")).

    b. **Discussion**

        i. **Actual Notice**

Here, despite Plaintiff's argument to the contrary (Docket Entry 14 at 2), it is clear that Plaintiff failed to properly serve Defendants. However, it is undisputed that Defendants received actual notice of the suit. (*See* Docket Entry 6; Docket Entry 7; Docket Entry 9 at 2-5; Docket Entry 11.) All Defendants have received copies of the summons and the complaint for the instant action, though said receipt was technically defective because the copies of the summonses were served at a separate time from copies of the Complaint. (*See id*; *see also* Docket Entries 6, 7.) Then, when copies of the summonses and the Complaint were finally served together on October 22, 2024, the 90-day deadline had passed, creating a second technical deficiency. (*See* Docket Entry 10 at 2; Docket Entry 14 at 21-25.) However, no Defendant has argued that any of these technical failings deprived any Defendant of actual notice of the suit.

        ii. **Good Cause**

Again, Defendants argue that pursuant to the 90-day deadline contained in Rule 4(m), they were served with insufficient process since Plaintiff served Defendants 95 days after filing the Complaint. (*See* Docket Entry 10 at 3.) Defendants acknowledge that such untimely service may be excused upon good cause shown, but argue that Plaintiff cannot establish good cause

here. (*See id.* at 3-4.)  Rather, they argue that Plaintiff's failure to serve Defendants in accordance with Rule 4 was solely due to his mistake of law, misunderstanding of the rules, or inadvertence, and that his failure to seek an extension of time before the deadline lapsed further undermines any argument that he could establish good cause. (*See id.*)

Plaintiff's Response in opposition to Defendant's Motion to Dismiss (Docket Entry 14) is not a model of clarity.  To wit, Plaintiff argues that his deficient service should be excused for "good cause shown" (*id.* at 4-8).  More specifically, Plaintiff argues that

> [a]fter encountering initial procedural errors, I promptly took steps to rectify the mistakes and ensured that all defendants were properly served before the [C]ourt's deadline of October 29, 2024. Courts generally favor parties who demonstrate diligence and good faith in complying with procedural rules.  In this case, my efforts to serve the defendants correctly, including submitting affidavits of service to the court, showcase my commitment to adhering to the [C]ourt's procedures.

(Docket Entry 14 at 7.)

The undersigned disagrees.  "Plaintiff has not been diligent, and [he] is thus not entitled to an extension for good cause." *Davis v. Univ. of N. Carolina at Greensboro*, No. 1:19CV661, 2022 WL 3586093, at *4 (M.D.N.C. Aug. 22, 2022) (unpublished).  As a threshold matter, the deadline for proper service was October 17, 2024—90 days after Plaintiff filed the Complaint in the instant action on July 19, 2024 (Docket Entry 1). Fed . R. Civ. P. 4(m).  Plaintiff cites to no authority and offers no basis as to why he believes the deadline was October 29, 2024.  Therefore, Plaintiff's arguments that he "satisfied the service requirements outlined in Rule 4" and that he corrected all procedural errors before the deadline (Docket Entry 14 at 4, 5, 7, 8, 10, 18) fail.

Indeed, "[t]he reasons for Plaintiff's delay in completing proper service were not external; rather they were wholly within [his] control.  This is not a case in which the defendant evaded service." *Davis*, 2022 WL 3586093 at *4.  The filings in the instant action seem to

9

indicate the possibility that the process server hired by Plaintiff was inept and/or dilatory. However, Plaintiff never makes this argument, and even if he did, the fact that a *pro se* Plaintiff experiences logistical issues with a process server does not alone constitute good cause. *See Morris-Wilkins v. Assurity Life Ins. Co.*, No. 5:24-CV-449-D, 2025 WL 1005050, at *2 (E.D.N.C. Apr. 3, 2025) (collecting cases).

Moreover, even if Plaintiff had not initially recognized the impropriety of his service, the filing of Defendants' Motion to Dismiss his Complaint due to defective service, which was served nine days ahead of the 90-day Rule 4 deadline (*see* Docket Entries 8, 9), put him on notice of said impropriety. *See Davis*, 2022 WL 3586093 at *4. Furthermore, although there have not been any "significant periods of inactivity" by Plaintiff here, there has been a "fail[ure] to seek extension of time before [the] deadline [has] lapsed[,]" which tends to undermine any claim of good cause. *Id.* (citing *Gelin*, 35 F.4th at 218; *Attkisson*, 925 F.3d at 627). "In sum, this court is not required to grant an extension for service" on the basis of good cause. *See id.*

### iii. Discretionary Authority to Extend Time

That notwithstanding, the undersigned agrees with Plaintiff's argument that courts may "allow plaintiffs to correct technical service errors rather than dismissing cases outright, especially when service is corrected within the permissible period." (*See* Docket Entry 14 at 4.) Plaintiff did fail to meet the technical requirements of the Federal Rules of Civil Procedure, to perfect service within the permissible period, and to meet the strict legal definition of "diligence" in this context. However, Plaintiff, again, is proceeding *pro se* and thus due additional latitude to correct defects in service of process, and he has at least "demonstrated good faith and a willingness to resolve any procedural issues expeditiously." (*Id.* at 7.) Moreover, for the reasons

stated below, the Court finds that Defendants were not prejudiced by the defects in Plaintiff's service and that dismissing the case would unfairly penalize him, essentially prioritizing form over substance. The Court will therefore exercise its discretionary authority to excuse Plaintiff's untimely perfection of service and dismiss Defendants' Motion to Dismiss.

As explained above, even in the absence of good cause this Court may exercise its discretion to grant an extension to complete service. *Gelin*, 35 F.4th at 220. In exercising this discretion, the excusable neglect standard set forth in Federal Rule of Civil Procedure 6(b)(1)(B) ("Rule 6(b)") applies. *Bolus v. Fleetwood RV, Inc.,* 308 F.R.D. 152, 156 (M.D.N.C. 2015) (finding the majority view holds that if a plaintiff fails to establish good cause for a service extension under Rule 4(m), the plaintiff must establish excusable neglect under Rule 6(b) to receive a discretionary extension).

> The Supreme Court has held that the Rule 6(b) inquiry is ultimately an equitable one,
>
> taking account of all relevant circumstances surrounding the party's omission. These include … [1] the danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Here, the first factor weighs in Plaintiff's favor. Defendants do not argue, and this Court is unable to find, any particularized prejudice any Defendant would face if the deadline were extended. Given that Defendants have had actual notice of this case since September 2024, this Court finds any risk of prejudice is minimized. *See Davis*, 2022 WL 3586093 at *5.

11

Case 1:24-cv-00603-TDS-JLW    Document 16    Filed 04/22/25    Page 11 of 15

"The second factor also weighs in Plaintiff's favor. This [C]ourt is considering extending the time to complete proper service [by five days *nunc pro tunc*]. This extension is short and will have minimal impact on these proceedings." *Id.*

The third factor, which the Fourth Circuit has described as "[t]he most important of the factors identified in *Pioneer*," *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996), weighs slightly in Defendants' favor. *See Davis*, 2022 WL 3586093 at *5. As discussed above, part of the reason for the delay has been Plaintiff's lack of diligence in recognizing and correcting service defects. However, this Court recognizes that some confusion was likely created by the Process Server's failure to simultaneously serve on Defendants copies of the summonses and the Complaint, (*see* Docket Entries 6, 7), which lessens Plaintiff's role in failing to properly serve Defendants.

"The fourth factor, whether Plaintiff has acted in good faith, is neutral. Plaintiff has not asked this [C]ourt for an extension; the [C]ourt is considering an extension upon its own exercise of discretion." *Davis*, 2022 WL 3586093 at *6.

In addition to the four non-exhaustive *Pioneer* factors, Fourth Circuit courts also examine whether discretionarily denying a motion to extend the time for service would cause "any prejudice to the plaintiff, such as by operation of statutes of limitation that may bar refiling." *Blaylock v. UPS, Inc.*, Civil Action No. 1:20-00156, 2020 WL 3979667, at *2 (S.D.W. Va. July 14, 2020) (unpublished) (internal quotation marks omitted) (quoting *Robinson v. G D C, Inc.*, 193 F. Supp. 3d 577, 580 (E.D. Va. 2016)). This additional factor finds direct support in the Advisory Committee Notes to the 1993 Amendments to Rule 4(m), which expressly state that discretionary "[r]elief may be justified … if the applicable statute of limitations would bar the

12

refiled action." "[C]ourts typically grant extra weight to this factor." *Id.* at *3; *see also* 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedures § 1137 (4th ed. Apr. 2022 update) ("Of these factors, courts place the most emphasis on a statute of limitations bar.").

"This factor weighs in Plaintiff's favor." *Davis*, 2022 WL 3586093 at *6. Plaintiff's claims are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). (*See* Compl. at 3.) "If this court were to grant [Defendants'] Motion to Dismiss under Rule 12(b)(5), even without prejudice, Plaintiff's federal Title [VII] claims would be time-barred." *See Birch v. Peters*, 25 F. App'x 122, 123 (4th Cir. 2001) ("A claimant who fails to file a complaint within the ninety-day statutory time period mandated by Title VII … generally forfeits her right to pursue her claims." (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-51 (1984)); *Nwaobasi v. First Sec. Fed. Sav. Bank, Inc.*, 105 F.3d 647 (4th Cir. 1997) ("dismissal of a Title VII claim without prejudice does not toll the ninety-day limitations period.") (collecting cases); *Angles v. Dollar Tree Stores, Inc.*, 494 F. App'x 326, 329 (4th Cir. 2012) (same).

> Thus, "[a]bsent an allegation that 'reasonable grounds exist for an equitable tolling of the filing period,' a complaint filed ninety-one days after the alleged date of receipt of a notice of right to sue from the [EEOC] must be dismissed as time barred." *Addison-Potts v. ECU Health Med. Ctr.*, No. 4:23-CV-103, 2023 WL 5183009, at *1 (E.D.N.C. Aug. 11, 2023) (quoting *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987)). Notably, equitable tolling, which may excuse late filing, can occur only in "those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (internal quotation marks omitted).

*Connelly v. Guilford Cnty. Sch.*, No. 1:24CV492, 2025 WL 551896, at *5 (M.D.N.C. Feb. 19, 2025).

Here, Plaintiff failed to perfect service within 90 days of filing the Complaint as required by Rule 4 and cannot show "good cause" for the reasons outlined above. Plaintiff points to no circumstances external to his control nor does he make any argument that he is

13

entitled to equitable tolling. Therefore, as Defendant argues, a dismissal here, even without prejudice, would essentially foreclose any avenue to relief for Plaintiff, since his claims would be time barred if he were to refile.

> That causes this [C]ourt great concern because it means Plaintiff's claims would ultimately not be adjudicated on the merits but instead disposed of on technical procedural grounds. That would not be in accordance with the Fourth Circuit's strong preference "in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); *see also Blaylock*, 2020 WL 3979667, at *3 (discretionarily granting motion for service extension because, *inter alia*, "there is a preference to resolve cases on the merits rather than technical procedural grounds").
>
> This [C]ourt concludes that the balance of the relevant factors weighs in favor of granting a discretionary extension of time for service. Although not all of the *Pioneer* factors weigh in favor of an extension, this [C]ourt ultimately finds the factors weighing against an extension to be offset by the crucial non-*Pioneer* factor concerning the prejudice imposed on a plaintiff by a statute of limitations bar. Granting this extension is also consistent with the Fourth Circuit's admonition that in cases like this one where there was actual notice, the relevant procedural rules should be applied liberally. *See Armco*, 733 F.2d at 1089; *see also* [*Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003)].
>
> This [C]ourt does not grant an extension lightly, especially considering the facts do not support a finding of good cause under federal law for an extension. … "[T]he rules are there to be followed," *Armco*, 733 F.2d at 1089, "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1. Plaintiff did not follow the rules here. If that pattern continues, it may result in substantive consequences directly affecting whether Plaintiff's case will be adjudicated on its merits. Further disregard of the rules will not be tolerated.

*Davis*, 2022 WL 3586093 at *6-*7; *see also Sandhir v. Little*, No. 1:17CV102, 2018 WL 4144454, at *4 (N.D.W. Va. Aug. 30, 2018) (unpublished) ("a district court may grant an extension for the time to file service under Rule 4(m), even if good cause has not been shown.") (collecting cases).

Here, Plaintiff "has made good faith efforts to effect proper service on Defendant[s] and has [attempted] to correct service deficiencies. Further, [Plaintiff] is a *pro se* litigant deserving of

14

additional latitude to correct defects in service of process." *See Covington, v. Fresenius Medical Care*, No. 3:24-CV-00182, 2025 WL 1105315, at *4 (M.D. Tenn. Apr. 14, 2025). Furthermore, one equitable factor relevant to the unique circumstances of this case weighs in favor of granting an extension—namely, that Plaintiff has already, by Defendants' own admission, properly served Defendants with correct copies of the summonses and the Complaint together (Docket Entry 11; Docket Entry 14 at 21-25; *see also* Docket Entry 10 at 2-5; Docket Entry 15 at 2). *See id.* Thus, the undersigned will recommend that the Court exercise its discretion under Rule 4(m) to extend the service deadline to October 22, 2024, *nunc pro tunc*, and deny Defendant's motion to dismiss (Docket Entry 8). *Id.*.[5]

### III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (Docket Entry 8) be **DENIED**.

                                                                /s/ Joe L. Webster
                                               United States Magistrate Judge

April 22, 2025
Durham, North Carolina

---

[5] *Accord Ice v. Oklahoma ex rel. Oklahoma Dep't of Consumer Credit*, No. CIV-16-1097-D, 2017 WL 2351008, at *1 n.1 (W.D. Okla. May 30, 2017) (unpublished) ("Defendants ... moved for dismissal due to insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5). Plaintiff subsequently perfected service, and Defendants concede this aspect of their Motions is moot.").